UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALEX PEREZ,

          Petitioner,

   v.

ERIC ARNOLD,

          Respondent.

No.  2:17-cv-01379-JAM-CKD-P

FINDINGS AND RECOMMENDATIONS

     Petitioner is a California prisoner who is represented by counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2254.  Respondent has answered the habeas petition, ECF No. 10, and petitioner has filed a traverse.  ECF No. 15.  Upon careful consideration of the record and the applicable law, the undersigned recommends that the petition be denied for the reasons set forth below.

**I.     Factual and Procedural Background**

     Following a jury trial in the Solano County Superior Court, petitioner was convicted of three felony counts related to an alcohol-induced accident leading to the death of Moses Sala. ECF No. 11-1 at 174-181 (Verdict Forms).  Petitioner was sentenced to 11 years in prison.  ECF No. 11-1 at 269-270 (Felony Abstract of Judgment).  The California Court of Appeal affirmed his convictions on December 22, 2016.  ECF No. 11-5 at 69-81 (direct appeal opinion).  Petitioner filed the pending habeas corpus petition on July 5, 2017.  ECF No. 1.

In affirming the judgment on appeal, the California Court of Appeal, First Appellate District, summarized the facts as follows:[1]

## A. The Events of December 4-5, 2012[2]

On the evening of December 4, Stephen Coen was working as a bartender at Applebee's in Vacaville. His customers included petitioner who was there with some buddies. The group had been at the bar on prior occasions, and Coen chatted with them periodically. When Coen testified at trial, he could not recall what time petitioner arrived at the bar on December 4, but he estimated that petitioner was there for around an hour and a half. Petitioner paid his bar tab and left Applebee's at 11:45 p.m.

While petitioner was at the Applebee's bar, he consumed three or four 22-ounce Blue Moon beers and one shot of Jim Beam whiskey. Coen became concerned about petitioner's behavior after he got into a few "tiffs" with other patrons, and he told petitioner to "calm down and quit getting into confrontations." While petitioner was outside attempting to "cool off," his friends decided it was time to leave. Coen told them that petitioner should not be driving. Coen testified at trial that petitioner appeared intoxicated when he left the bar.

Just before midnight, petitioner called his friend Hattie Mouzes to discuss her plans to visit him during the Christmas holiday. Mouzes knew petitioner was driving because she heard his truck's "really loud" engine. Mouzes could also tell from prior experience that petitioner had been drinking because his speech was animated and he was slurring his words. At least five times during their 5 to 10-minute conversation, Mouzes told petitioner to slow down and pull over to the side of the road. She became frustrated when he refused to comply with these requests and hung up on him. Approximately 10-15 minutes later, petitioner called back and told Mouzes that he had hit something.

Just after midnight on the morning of December 5, Fairfield police officer Keith Pulsipher was dispatched to the scene of an accident on Peabody Road, a two-lane road with one northbound lane and one southbound lane running between Vacaville and Fairfield. Visibility was poor that night; it was raining and the few streetlights on that stretch of the road caused a "glare," which "ma[de] it hard to see for any reasonable distance."

At around 12:10 a.m., Pulsipher and his partner found a truck parked on the northbound shoulder of Peabody Road facing south. The truck had sustained moderate front end damage to the bumper,

---

[1] These factual findings are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1). However, the court has independently reviewed the record and concluded that there is nothing to rebut this presumption of correctness in this case.

[2] "All date references in our factual summary are to the 2012 calendar year unless otherwise stated." All references to appellant in the state court opinion have been changed to petitioner to reflect the current case status.

grill, hood and passenger side headlight. The driver's airbags had deployed and there were no occupants in sight. Because it appeared that the truck had been traveling south, the officers searched a 500-foot area north of where the vehicle was abandoned, but they found no explanation for the truck damage. A search of the VIN number showed that the truck was registered to petitioner's uncle and aunt, Albert and Maricella Gutierrez, whose address was in Vacaville.

On the morning of December 5, at approximately 12:16 a.m., Vacaville police officer Nichole King was dispatched to the Gutierrez home. Petitioner was at the house and asked why the officer was there. King responded that she had come to see whether petitioner was planning to retrieve his truck and he said that he was getting ready to do that. King asked if petitioner had been driving the truck. Petitioner said "no, he had a DD," meaning a designated driver. King expressed concern about the designated driver, but petitioner refused to disclose his or her identity. When King asked petitioner what he hit, he responded that he didn't know.

King testified that when she interacted with petitioner at the Gutierrez house, he appeared intoxicated. His speech was slurred; his gait was unsteady; his eyes were bloodshot and watery; his breath smelled like alcohol; and he interrupted several times when King attempted to talk with Mr. Gutierrez. King offered this further explanation for her conclusion: "He asked several times if he could go get the truck. I made the blunt statement to him, 'No, not you, you're drunk,' and he never argued that fact." King also testified that it appeared to her that appellant "wanted to end our contact and wanted me to leave the residence." After Mr. Gutierrez said he was going to look at the truck, King prepared to leave, telling petitioner he should just be honest with the Fairfield police and tell them what he hit. King reminded petitioner that "that's what insurance was for," and although petitioner laughed, he seemed to agree.

Later on the morning of December 5, California Highway Patrol officer Darren Carrington went to the accident scene to conduct an investigation. The road was wet from the night before, and it had been a foggy morning, but the fog was lifting by the time Carrington arrived. That stretch of road was in an unincorporated area of the county just north of the Fairfield city limit. In both directions of the two-lane road, a white "fog line" ran between the outer edge of the driving lane and a six-foot shoulder. Beyond the shoulder, the ground turned to gravel and then dirt. The speed limit was 45 miles per hour.

Carrington found a body lying on a grass embankment near the west side shoulder of the road, along with some "debris" from appellant's truck. Carrington reached the conclusion that the victim had been walking south on Peabody on the "west roadway edge . . . at or near the fog line" when he was struck by the truck. Carrington then left the accident scene and went to the home of petitioner's uncle, which was about a 10-minute drive. When Carrington questioned petitioner about the accident, he smelled alcohol on petitioner's breath. Petitioner told the officer that he was driving south on Peabody at the speed limit of 45 miles per hour when he hit something, but he was "unsure" of what. He reported that he was

"dazed and confused" when the truck came to rest facing south in the northbound lane. Petitioner denied that he had consumed alcohol and did not mention a designated driver.

Jackson Harris is an investigating deputy coroner for the Solano County Sheriff's Department. Harris was assigned to determine the cause and manner of the death of Moses Sala, the person who was found on the side of Peabody Road near petitioner's truck. Harris examined the body before it was removed from the accident scene. Sala was lying on a grassy embankment approximately 20 feet from the western edge of the road. A hat and shoe were recovered from the west edge of the road and a matching shoe was found in a grassy area on the opposite side of the two-lane road. Harris determined that Sala lived in Fairfield, approximately a half mile south of the accident scene and that he was walking in that direction, toward the oncoming northbound traffic, when he was hit from behind by appellant's truck.

When Harris examined the body at the accident scene, it was apparent that Sala sustained multiple compound fractures; the femur bone in both of his legs had broken through the skin; and one of his humerus bones had broken through the skin of his arm. Numerous lacerations, abrasions, contusions and bruises covered his body, including on his head, face and chest. Blood samples were taken at the scene; an autopsy was performed; and Sala's death certificate was introduced into evidence at trial.

On the evening of December 5, at 7:58 p.m., petitioner sent his friend Hallie Mouzes a text message which stated: "I killed someone last night." Under cross-examination, Mouzes acknowledged that she did not know whether petitioner sent that message after law enforcement notified him about discovering Sala's body.

## B. **The Forensic Evidence**

Police collected blood samples from inside the truck on the airbags and outside the truck on the front hood. Petitioner could not be excluded as the source of the blood on the airbags. The blood from the hood matched a reference sample from Sala.

California Highway Patrol officer William Gerstmar conducted an inspection of petitioner's truck at the tow yard where it had been moved after the accident. Gerstmar testified that the front brakes appeared new and serviceable and he could not find anything wrong with the rear brakes. Gerstmar took photographs of the truck interior, which showed that the "curtain" airbags on both sides of the cabin had deployed, and the steering wheel airbag had also deployed, but the front panel airbag on the passenger side had not. Gerstmar testified that the likely explanation for this fact was that the passenger seat sensor had not been activated because nobody was sitting in it.

California Highway Patrol Lieutenant John Blencowe testified about crash data retrieved from the Event Data Recorder (EDR) in appellant's truck. Blencowe explained to the jury that when the airbags deployed, a computer in the truck recorded

4

pertinent data on a sensing diagnostic module (SDM), and that data was subsequently printed in a PDF document. The PDF document was introduced into evidence as People's Exhibit 11. Using data in Exhibit 11, Blencowe testified that appellant's truck was traveling at a speed of 81 miles per hour when it struck Sala. Two and one-half seconds before impact, the truck was traveling at a speed of 85 miles per hour, then the driver engaged the brakes and slowed to 81 miles per hour.

## C. **Expert Testimony Regarding the Effects of Drinking Alcohol**

Samandeep Mahil is a criminalist employed by the Solano County District Attorney's Bureau of Forensic Services. At trial, Mahil testified as "an expert in the area of the effects of alcohol on the human body."

Mahil described the manner in which alcohol is absorbed into the bloodstream. She also testified that as the concentration of alcohol in a person's blood (the BAC) increases, "impairment also increases." Initially, alcohol consumption causes mental impairments, and as the BAC increases there are also physical impairments. Mahil testified that alcohol affects everyone differently. She then offered the opinion that a person with a BAC of .08 would "typically" show signs of small muscle impairment, although such impairment may also be apparent in a person with a BAC of .06. Mahil also testified that when the BAC reaches the level of .08 or higher, she would "definitely" expect to see large muscle impairment, although such signs might also manifest at lower levels for some individuals.

Mahil testified that standard "objective signs of intoxication" include red eyes, slurred speech, and an unsteady gait. Red watery eyes are a sign that alcohol is affecting the central nervous system by slowing down brain function; slurred speech is a sign of small muscle impairment; and an unsteady gait is a sign of large muscle impairment. Mahil offered the opinion that all people are impaired when their BAC level reaches .08, but that they can be impaired at levels much lower than that.

Mahil was asked about a hypothetical man of appellant's weight who consumed the amount of alcohol served to appellant on December 4, displayed the symptoms attributed to appellant that night, and had been involved in a car accident. Mahil testified that these circumstances were "consistent with someone who would be impaired and unable to operate a motor vehicle safely."

Mahil also described a mathematical formula for calculating a person's BAC level. Applying that formula to the person in the prosecutor's hypothetical, Mahil gave the opinion that the person's BAC level was between .033 and .080 percent. However, during cross-examination, Mahil acknowledged several variables can affect the calculation of person's BAC level. Ultimately, Mahil offered the opinion that in the hypothetical described to her "the individual could have been impaired by alcohol and the fact that they are exhibiting slurred speech, unsteady gait, if that's due to the alcohol, then they

would be impaired for the purpose of driving a motor vehicle safely."

## II.    Legal Standards

### A. Federal Habeas Corpus Standard

An application for a writ of habeas corpus by a person in custody pursuant to a state court judgment can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.2d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following limitation on the granting of federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough

6

v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

Relief is also available under the AEDPA where the state court predicates its adjudication of a claim on an unreasonable factual determination.  28 U.S.C. § 2254(d)(2).  The statute explicitly limits this inquiry to the evidence that was before the state court.  See also Cullen v. Pinholster, 563 U.S. 170 (2011).  Under § 2254(d)(2), factual findings of a state court are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination.  Therefore, a petitioner must show clearly and convincingly that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338 (2006).

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

## B. Sufficiency of the Evidence

Due process requires that each essential element of a criminal offense be proven beyond a reasonable doubt.  In re Winship, 397 U.S. 358, 364 (1970).  In reviewing the sufficiency of evidence to support a conviction, the question is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, (1974).  If the evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact

7

resolved any such conflicts in favor of the prosecution," and the court must "defer to that resolution." Id. at 326.

## III. Analysis

### A. Sufficiency Challenge to Leaving the Scene of an Accident Involving Injury.

In his first claim for relief, petitioner contends that the evidence supporting his conviction for leaving the scene of an injury accident and the related sentencing enhancement imposed pursuant to California Vehicle Code § 20001 is legally insufficient because there is no direct evidence that petitioner knew he injured a person before leaving his truck on the side of the road.[3] Petitioner argues, as he did on direct appeal, that while there was evidence that petitioner "saw an object in the forward path of the 2012 Silverado…, it does not prove that [he] was aware that the object struck was a human being." ECF No. 11-5 at 27 (appellant's opening brief). Petitioner's principal argument consists of quoting from People v. Mayo, 194 Cal. App. 2d 527 (1961). See ECF No. 1 at 3-4. However, petitioner fails to cite, much less apply, the proper standard of review governing a sufficiency challenge raised in a federal habeas petition. See Jackson v. Virginia, 443 U.S. at 319.

Here, applying the doubly deferential Jackson standard of review, a rational jury could have found sufficient evidence that petitioner knew or reasonably should have known that the object he struck with the truck and therefore injured was in fact a person. The California Court of Appeal's decision is not an unreasonable application of the Jackson sufficiency standard. The Court of Appeal emphasized that "the same evidence that 'tends to prove' [petitioner] saw an obstacle in his path also substantially supports a finding that appellant saw his victim." ECF No. 11-5 at 77 (direct appeal opinion). Reliance on the first responder's vantage point in failing to locate the body "which ultimately was found 20 feet to the side of the roadway on a grassy embankment is not the equivalent of seeing a person upright walking along the roadway shoulder illuminated by headlights." Id. While the evidence in this case was circumstantial, such evidence

---

[3] Petitioner received a five-year sentencing enhancement on the vehicular manslaughter conviction based on the jury's special finding that he also fled the scene of the accident. See ECF No. 11-1 at 175-176 (jury verdict form).

8

is sufficient as a matter of law to convict petitioner of leaving the scene of an accident after causing an injury. Id. at 76 (citing People v. Nordberg, 189 Cal.App.4th 1228, 1238 (2010)). Moreover, in this case there was no specific denial by petitioner that he injured a person with the truck he was driving. Id. at 77 (noting that petitioner "did not just dodge the facts; he specifically lied about having a designated driver; how fast he was driving; and how much he had been drinking."). All of the circumstantial evidence points towards petitioner's knowledge that he injured a person with the truck at the scene of the accident as the California Court of Appeal so found. This was not an unreasonable determination of the facts nor contrary to federal law. 28 U.S.C. § 2254(d). Accordingly, the undersigned recommends denying petitioner's first claim for relief.

### B. Sufficiency Challenge to Counts One and Two

In his last claim for relief,[4] petitioner asserts that the trial court erred in denying petitioner a new trial on the ground that the evidence was insufficient to support a conviction on counts one and two which required evidence of petitioner's alcohol impairment.[5] ECF No. 1 at 4-12; ECF No. 11-5 at 32-33 (appellant's opening brief). Since it was unclear whether petitioner was raising this issue on direct review as a straight sufficiency challenge or as a challenge to the trial court's admission of expert testimony from Samandeep Mahil on the effects of alcohol on the human body, the California Court of Appeal denied relief on both theories. ECF No. 11-5 at 78-81 (direct appeal opinion). In his reply brief before this court, however, petitioner clarifies that he is challenging the sufficiency of the evidence to support the jury's verdict on counts one and two.

---

[4] To the extent that petitioner's traverse identifies the "failure to employ [a] field sobriety test in determining petitioner's condition post-accident" as a separate ground for relief, the court notes that this issue was not raised in the operative § 2254 petition filed by counsel. However, the court does not liberally construe pleadings filed by trained counsel. Even if it had been properly raised, this claim does not raise any federal constitutional issue and is therefore not cognizable on habeas. See 28 U.S.C. § 2254(a); see also Perez v. Pima County Superior Court, 50 Fed. Appx. 368 (9th Cir. 2002) (finding no federal constitutional right to counsel before submitting to a chemical sobriety test even though state rules of criminal procedure guaranteed a suspect's right to consult with counsel either in person or by telephone).

[5] The jury acquitted petitioner on count three charging him with driving with a .08% or higher blood alcohol concentration causing injury in violation of California Vehicle Code § 23153(b). ECF No. 11-1 at 179 (verdict form).

ECF No. 15 at 5-6.  As a result, the issue before this court is limited to whether a rational jury could have found beyond a reasonable doubt that petitioner's driving was impaired by his alcohol consumption on the night of the accident.

Applying the same <u>Jackson</u> standard of sufficiency of the evidence, the state court's decision denying relief on this claim is neither contrary to nor an unreasonable application of clearly established federal law.   The California Court of Appeal found sufficient evidence of petitioner's alcohol impairment based on the "extensive uncontradicted evidence…which included testimony from the Applebee's bartender who interacted with [petitioner] within 15 minutes of the accident; the testimony of petitioner's friend, Hattie Mouzes, who tried, but failed, to convince him to pull over because he sounded too impaired to drive and he was driving at a high rate of speed; the testimony of Officer King who concluded that [petitioner] was still visibly intoxicated 15 or 20 minutes after the accident; and the testimony of Officer Carrington who could smell alcohol on [petitioner's] breath the day after the accident."  ECF No. 11-5 at 80-81 (direct appeal opinion).  In this case, the defense succeeded in convincing the jury that the prosecution failed to prove beyond a reasonable doubt that petitioner's blood alcohol concentration was .08% or higher.  However, there was still more than sufficient evidence demonstrating that petitioner's driving was impaired by alcohol.  As a result, the state court opinion denying relief is neither contrary to nor an unreasonable application of clearly established federal law.  The undersigned therefore recommends denying petitioner's second claim for relief.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus (ECF No. 1) be denied on the merits.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (the district

court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 13, 2019

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/pere1379.merits.docx